### NICOLET'S ADMINISTRATOR *vs.* PILLOT & LE BARBIER.

Where an agent was directed by his principal to obtain *securities* for the payment of *protested notes*, and to hand them over when obtained to certain creditors of the principal, and the agent not having obtained new securities handed over the notes to the creditors, *it was held* that their title to the notes was good, and that an action of *trover* would not lie against them at the suit of the *administrator* of the principal, notwithstanding that the notes were delivered over *after the death* of the principal ; the death of the principal under the circumstances of the case being deemed *not a revocation* of the power of the agent.

ERROR from the superior court of the city of New-York. Benjamin Clapp, administrator, *with the will annexed,* of *\*Theodore*    [ *241 ]
*Nicolet* deceased, brought an action of *trover* against *Pillot* and
*Le Barbier* for four promissory notes amounting together to the sum of $7,
473, 13, under the following circumstances : *Nicolet,* a merchant residing
at *New-Orleans,* had, through his agent *R. Braem,* of New-York, purchased
of the house of *Mansing, Munroe & King,* of New-York, a number of
promissory notes payable at future days : one, a note for $772,87, given by
Thomas Graves & Co. payable at *Jackson,* in Mississippi, on the 23d January, 1837, and three others payable at *Vicksburg,* on *1st April, 15th May* and
and 24*th May,* 1837, which notes were endorsed by *Lansing, Munroe &
King.* On 12th April, 1837, *Braem* received a letter from *Nicolet* dated
2*d April,* enclosing the note of T. Graves & Co. protested for non-payment,
desiring him to claim the amount and place it to his (Nicolet's) credit in
account with *Pillott & Le Barbier.* On the first May, 1837, *Braem* received another letter dated 22d April, 1837, from *Nicolet,* who transacted
business under the name of *Th. Nicolet & Co.,* in which he says, " We flatter ourselves that by this time you have succeeded to obtain good guaranties
from Messrs. Lansing, Munroe and King, and now request you hereby to
hand over for our account to Messrs. Pillot and Le Barbier of your city,"
and adds that he supposed that *Braem* was already in funds for the protested note of T. Graves & Co. and directed him to hand over the amount to
*Pillot & Le Barbier.* To which letter was attached a P. S. in these words :
" Our understanding is that you shall hand over without any delay whatever,
to Messrs. *Pillot & Le Barbier* for our account with them, all the guaranties
obtained from Messrs. Lansing, Munroe and King." *Braem* also received
from *Nicolet* a letter dated 25th April, 1837, in which, after mentioning that
a certain house in Natches declined to take up T. Graves & Co's note, he
says, " We consequently confirm you what we on the 22d inst. had the honor
to mention in relation to that note, and reiterate our entreaty to hand over
for our account, to Messrs. P. & Le B. all what you may have been able
to get possession of, as guarantees in this unfortunate transaction." *When notice of the protest of the note of T. Graves &    [ *242 ]
Co. was received, *Braem* called upon Messrs. Lansing, Munroe

& King to pay it or give good securities or guaranties for it, and such other of the notes as might be protested, and they promised to give such securities or guaranties as soon as the protested notes should come on from the south. On receipt of *Nicolet's* letter of 22d April, Braem again called upon the firm of Lansing, Munroe & King, who renewed their promise to consummate the arrangement as to the guaranties for such of the notes as had been or might be regularly protested, whenever the same should be delivered to them. The letter from Nicolet to Braem, of 22d April, was *enclosed* in a letter from Nicolet to Pillot & Le Barbier, also dated 22d April, in these words : " Enclosed is a letter for Mr. Braem, of your city, by which we order him to place in your hands from account, all the securities which he may obtain or shall have already obtained from Messrs. Lansing, Munroe & King of your place, on account of an exchange transaction we have had with them." *Pillot,* one of the firm, delivered to *Braem* the letter directed to him, and it was then agreed by *Braem* that he would hand over to Pillot & Le Barbier the securities or guaranties referred to in Nicolet's letter as soon as they were received. On 2d May, *Braem* wrote *Nicolet,* acknowledging the receipt of the letter of 22d April, and promising to comply with its requirements. On the *third* day of *May,* Nicolet died at New-Orleans, and having left a last will and testament, his executor, *T. B. Blanchard,* on the 5th May, proved the will, and on the 16th May, letters testamentary were granted to the executor. On 23d May, *Blanchard,* wrote *Braem,* enclosing to him the *four notes in question* in this case, and desiring him to obtain payment of the same from Messrs. Lansing, Munroe & King : this letter was received by *Braem* on the *sixth* day of June. On the 27th May, *Blanchard* again wrote to *Braem,* informing him that Messrs. Pillot & Le Barbier had written to him demanding the fulfilment of the promise of *Nicolet* concerning the notes forwarded on the 23d May, and then observing *that his duty as administrator of the estate would not permit him to accede to such demand, he being bound to keep all the assets of the estate for the benefit of the creditors at large, he *forbade him to part with any values :* this letter was received by *Braem* by the express mail on the *fifth* day of June. On the *tenth* day of *June,* not having received any new securities or guaranties from Messrs. Lansing, Munroe & King, *Braem* delivered the notes in question to Messrs. *Pillot & Le Barbier.* It was admitted that *Nicolet,* at the time of his decease, was indebted to the defendants in a sum exceeding $30,000. The presiding judge charged the jury that the death of Nicolet did not vary or affect the rights the defendants possessed in the notes in controversy ; and that the delivery of the notes by Braem to the defendants was, under the circumstances, a substantial compliance with the instructions of Nicolet. To which charge the plaintiff's counsel excepted. The jury found a verdict for the defendants,

[ *243 ]

upon which judgment was entered.   The plaintiff sued out a writ of error.

*S. A. Foot*, for the plaintiff in error, insisted that the authority of *Braem* was revoked by the death of *Nicolet;* and if not, that *Braem* exceeded the power conferred upon him by delivering up the notes, when his authority only extended to delivering to the defendants such securities or guaranties as he should obtain from the endorsers of the notes.

*F. B. Cutting*, for the defendants in error.

*By the Court*, NELSON, Ch. J.   The judgment of the court below, I am of opinion, is correct.   The letters of *Nicolet* of 2d, 22d and 25th April, amounted, in legal effect, to a virtual assignment of the notes in question to the defendants for a valuable consideration.   That was obviously the understanding and intent of all parties concerned.   In respect to *Nicolet*, it is too frequently and earnestly expressed in his correspondence to be mistaken for a moment.   He had failed to fulfil his engagements with the defendants' house, knew they were laboring under heavy advances by reason thereof, *at a period of great commercial embarrassment, and was   [ *244 ] endeavouring, with commendable sensibility and zeal, to relieve them.   The notes previously bought of Lansing, Munroe and King and endorsed by them, (several of which were then due, and protested,) were, at once, turned over for that purpose, with urgent directions to his agent to procure guaranties from the endorsers.   These notes *Nicolet* supposed might be made available securities to the defendants; he also knew the endorsers were within their reach.   They were, doubtless, the best in his power to offer at the time.

It was said on the argument, that the agent was not directed to transfer the notes, *eo nomine*, but only the guaranties.   This is a criticism upon words without regard to the substance of the transaction.   The collateral securities would be valueless, unaccompanied with an interest in the notes; it is impossible to separate them and give any legal effect to the obvious design of the parties.   If the notes were paid, on presentation, by the endorsers, the money was directed to be applied on account; if not, guaranties were to be procured and delivered over.   The fund appropriated was the notes—they were assigned, if any thing.

If the above view be correct, then the death of Nicolet becomes unimportant in respect to the rights of the defendants, as it could in no manner affect their title, which became perfect by the transfer of the interest in the notes.   Manual delivery at the time was not essential for this purpose.

Judgment affirmed.